26138. CORDELL *v.* MACON COCA-COLA BOTTLING COMPANY *et al.*

DECIDED JULY 2, 1937.

*Edward F. Taylor, V. J. Adams,* for plaintiff.
*Harris, Russell, Popper & Weaver, J. D. Shannon,* for defendants.

BROYLES, C. J. Mrs. Lenora McCook Cordell filed in the superior court of Twiggs County an action for damages against the Macon Coca-Cola Bottling Company, of Bibb County, as the manufacturer, and Dick Methvin, of Twiggs County, as the retail vendor of a bottle of coca-cola which, it was alleged, she drank with resultant injury because said bottle contained a partly-decomposed fly and was unfit for human consumption. The defendants denied liability, and on the trial the court granted a nonsuit as to each defendant. On this judgment the plaintiff assigns error. It is conceded that if the court properly nonsuited the case as to the resident defendant Methvin, it was properly nonsuited as to the non-resident defendant, the Macon Coca-Cola Bottling Company, because of lack of jurisdiction. The following evidence is undisputed:

Dick Methvin, one of the defendants, testified that as a retailer he sold bottled coca-cola; that he had the coca-cola in a container or ice-box in his store; that the plaintiff, Mrs. Cordell, who was formerly Miss Lenora McCook, came quite regularly to buy drinks

from him; that "it is true that my customers have gone to the box and taken out the drinks and opened them themselves and paid me for them. . . It is nothing unusual for some one to get a drink out of the box and hand the money to me or put it on the counter, and I have no objection to them doing that. I remember when Mrs. Cordell, then Miss McCook, was in my place with Mr. Cordell one day in April, 1935, and Mr. Cordell complained to me about some flies in a bottle of coca-cola. I did not wait on them at that time. . . I got the money for the coca-colas. . . I saw them lay a dime on the counter, and I accepted it. At that time I was buying my supply of coca-cola from the Macon Coca-Cola Bottling Company. . . I saw them while they were drinking. I didn't go to the front of the store at all. They waited on themselves and drank the coca-colas." H. L. Cordell testified: "I remember back in April, 1935, when Miss McCook and I went to the store of Mr. Dick Methvin and bought two coca-colas. . . The red coca-cola box was sitting about half way the store. . . Mr. Methvin . . was waiting on some customers. . . We went in there every day and bought drinks from him. We would go in and get our own drinks. . . Mr. Methvin never objected to our going in there and getting them ourselves and opening them. I have seen other customers doing the same thing. I usually handed his compensation for the drinks to him. On that particular occasion Mr. Methvin received the dime for the two coca-colas. . . I opened the drinks for Mrs. Cordell and myself. Those bottles had not been previously opened. . . At the time we were drinking the coca-colas we were talking to Mr. Griffin, and all of a sudden she [plaintiff] reached in her mouth and pulled something out and looked at it, and it was a partly-decomposed fly, and I looked at it and handed it to Mr. Griffin, and he looked at it. I didn't go to Mr. Methvin at that time and tell him, because there were customers in the store, and I didn't want to embarrass him. After that Miss McCook didn't drink any more of the coca-cola. She had already drunk two thirds of it. She said she had already swallowed one and that she caught the other one in her mouth. I took her on home at that time, and then went back to Mr. Methvin's store and told him about it. The store is not brightly lighted, and where the drink box is sitting is pretty dark. . . The fly was

partly decomposed, but you could see its legs and wings, but most of his body had gone into the drink and left the skeleton there. I took the fly and showed it to Mr. Methvin. Mr. Luke Griffin saw the fly when my wife took it out of her mouth. . . The store is darker on the inside than it is on the outside."

The plaintiff testified as follows: "I am Mrs. Cordell, formerly Miss Lenora McCook. I remember in April, last year, when I went to Mr. Methvin's store with Mr. Cordell to get a coca-cola. I got a coca-cola, and there were two flies in it. I swallowed one of the flies and got the other out of my mouth before I swallowed it. It was a good-sized fly, partly decomposed. I know that I swallowed one fly, because I felt the lump in my throat as I swallowed. . . The drink box is on the inside of the store, and it is rather dark in the store. You could not see as well in there as you can in here. . . I drank approximately two thirds of the coca-cola before I found the fly in my mouth, and I commenced heaving and told Mr. Cordell to take me home."

The foregoing testimony shows that the plaintiff was sold a bottle of coca-cola containing a partly-decomposed fly; and Methvin, in his answer, "admits that it was his duty not to sell a bottle of coca-cola having therein a fly," and the Macon Coca-Cola Bottling Company, in its answer, "admits that it is its duty not to bottle coca-cola with flies in the bottle, and it has the further duty not to offer the same for sale after it has been bottled in such condition." Counsel for defendants in error insist, in their brief, "that coca-cola is placed in an ice-box for the purpose of cooling it to a temperature proper for consumption," and that it was not put there for the sole purpose of offering it for sale; and that when the plaintiff and her escort chose to take the bottle out of the ice-box without waiting to be served by Methvin, she waived her right to complain.

Granting that the bottles of coca-cola were put in the box for cooling purposes, this was to make them more salable, and under the evidence they were also put there for the purpose of offering them for sale. Since they were put there for sale, and were sold there in accordance with a custom approved by the store-keeper, the other purpose in putting them there is immaterial under the facts of this case. The undisputed evidence shows a completed sale. The coca-cola was delivered to the plaintiff ac-

cording to a custom, and the seller accepted pay therefor. It was the custom of buyers to wait on themselves, and Methvin knew of this custom and approved of it. On this occasion he knew that the coca-cola was being sold according to this custom, and "saw them while they were drinking." This was one of his approved and usual methods of selling coca-cola. The parties consented as to the goods to be sold, the price therefor, the delivery, and the complete sale. Code, § 96-101; *Tift* v. *Wight,* 113 *Ga.* 681 (39 S. E. 503). The place where the plaintiff was drinking the coca-cola in the store was rather dark, so that the plaintiff could not see well. Methvin admits that it was his duty not to sell a coca-cola with a fly in it. Did he use ordinary care and diligence not to sell a bottle of coca-cola with a fly in it? Since he knew that his customers waited on themselves and that often he would not be there to examine a bottle of coca-cola before handing it to a customer, did ordinary diligence require him to inspect the bottles before placing them in the box for cooling *and for sale?* On the other hand, did the plaintiff have a right to assume that since the coca-cola was offered for sale it was fit for human consumption, or did ordinary care require her to carry the coca-cola to the light and inspect it? In *Atlanta Coca-Cola Bottling Co.* v. *Sinyard,* 45 *Ga. App.* 272 (164 S. E. 231), the suit was "for damages alleged to have been sustained on account of drinking foreign matter contained in a bottle of coca-cola," and the court held: "It can not be said as a matter of law that the plaintiff, in drinking from the bottle of coca-cola, which had previously been unopened, without first making an examination of its contents, was, as a matter of law, guilty of such a failure to exercise ordinary care for her own safety as would bar a recovery, or that the jury were not authorized, despite the evidence on behalf of the defendant as to the manner and method and degree of care exercised by it in conducting its business of bottling beverages, to apply the doctrine of res ipsa loquitur and find against the defendant upon the issue as to its negligence." See also *Coleman* v. *Dublin Coca-Cola Bottling Co.,* 47 *Ga. App.* 369, 370, 374 (170 S. E. 549); *Copeland* v. *Curtis,* 36 *Ga. App.* 255 (136 S. E. 324); *McPherson* v. *Capuano,* 31 *Ga. App.* 82 (121 S. E. 580); *Keiley* v. *Bristol,* 30 *Ga. App.* 725 (119 S. E. 334). Code, § 105-1101. In the case last cited, the defendant merely left the liquor, which was unfit

for human consumption, at a place where he knew, or by the exercise of ordinary care should have known, that a guest would find it; and the court held that carelessness in so leaving the liquor would render the defendant liable if the plaintiff by the exercise of ordinary care could not have avoided the injury. The facts in the instant case are stronger, because in the *Keiley* case there was no sale or offer of sale, or even permission granted to get the liquor; and in the instant case, even if the deleterious drink was put in the box to cool, under the evidence it was also put in there for sale. The custom approved by the storekeeper was in effect an invitation to customers to wait on themselves, and constituted a continuing offer of sale while the store was open. Whether the defendants exercised due care and diligence in performing their admitted duty not to sell a bottle of coca-cola with flies in it, and whether the plaintiff by the exercise of ordinary care could have avoided the alleged injury to herself resulting from the alleged negligence of the defendants, were questions of fact for a jury. The court erred in granting a nonsuit as to each defendant.

*Judgment reversed. MacIntyre and Guerry, JJ., concur.*