29307. WATKINS *v.* DALTON COCA-COLA BOTTLING CO.

DECIDED MARCH 11, 1942. REHEARING DENIED MARCH 27, 1942.

R. Carter Pittman, L. W. Honeycutt, for plaintiff.
Hardin & McCamy, for defendant.

STEPHENS, P. J. Mrs. Fannie Watkins brought suit for damages against the Dalton Coca-Cola Bottling Company, in which she alleged that she purchased a bottle of coca-cola which had been bottled and capped by the defendant and placed in the coca-cola vending slot machine; that after she had drunk practically all of the coca-cola she discovered in the bottom of the bottle an open safety pin which had become "pitted and corroded," and that as a result thereof she became poisoned and sustained injuries. The plaintiff alleged that the defendant was negligent in bottling a bottle of coca-cola containing a brass safety pin, in that the defendant failed to clean and inspect the bottle before filling it; that the safety pin was made of a metal commonly known as brass, which is an alloy of copper and zinc, and that in a manner unknown to the plaintiff and well known to the defendant the acids and other chemicals in the coca-cola acted upon the safety pin so as to release into the solution, which the plaintiff drank, poisonous and deleterious substances which made the drink a poisonous concoction.

The defendant filed its answer in which it admitted that it bottled and sold coca-colas through the vending machine from which the plaintiff alleged that she purchased the coca-cola drunk by her.

The defendant further alleged that in the bottling of such coca-cola its servants and employees exercised reasonable and ordinary care and caution, in that such coca-cola was bottled in its bottling plant in accordance with the latest improved and most scientific methods of bottling, and that the latest improved machinery was used; that when the coca-cola was bottled it was carefully inspected by its servants, and when the bottle of coca-cola left its plant it was free from any defects, and contained no harmful and injurious substances in it; that if a safety pin was in the bottle of coca-cola, as alleged by the plaintiff, it was there without the defendant's knowledge, and was not discoverable by the defendant in the exercise of reasonable and ordinary care in the process of bottling and inspection.

The case came on for trial, and at the conclusion of the plaintiff's evidence the judge, on the motion of the defendant, granted a nonsuit, and the plaintiff excepted.

It is the rule that on a motion for nonsuit the evidence, unless it is vague and contradictory, is to be construed most favorably to the plaintiff. *Highsmith* v. *National Linen Service Cor.*, 63 *Ga. App.* 112 (10 S. E. 2d, 237); *National Land & Coal Co.* v. *Zugar*, 171 *Ga.* 228 (2) (155 S. E. 7). A jury would have been authorized to find from the evidence that the brass safety pin was in the bottle of coca-cola at the time the plaintiff purchased and drank it. There was evidence authorizing the inference that the plaintiff's illness, which followed shortly after she drank this coca-cola, was caused by the safety pin having been in the bottle of coca-cola. It appeared from the evidence that brass or zinc coming in contact with hydrochloric acid will form a zinc chloride that is poison, and that hydrochloric acid is supposed to be present in the stomach at all normal times. The jury were authorized to find that the plaintiff's illness was similar to an illness ordinarily produced by either zinc chloride or copper sulphate poisoning, which could be caused by a corroded brass safety pin which the plaintiff testified was in the bottle of coca-cola. There was evidence to the effect that the plaintiff's illness might have been the result of such poisoning. The jury were authorized to find that this safety pin could not have likely gotten into the bottle of coca-cola after it had been bottled and capped by the defendant. There was evidence tending to show that the defendant employed modern methods and machinery

in the bottling of coca-cola; that it used a caustic solution to sterilize and clean bottles before the coca-cola was placed therein; and that the bottles of coca-cola received three separate and distinct inspections for the purpose of discovering if they were clean and free from defects before being filled and after being filled. The president of the company, sworn for the plaintiff, testified on cross-examination as to such inspections which are made by employees of the company as to bottles passed before a light on a continuous conveyor, and he also described how the bottles were filled and thereafter inspected by the defendant's employees. He testified that if a safety pin were in a bottle the caustic soda would not remove it, but would make it "shinier and bright," and that "caustic soda would make it extremely bright, and I think an extremely bright object would be visible in a bottle." He further testified that it would be the duty of the first inspector to take the bottle out if he saw the safety pin in it; that if the inspector had not been at his post or had failed to see the safety pin it would have gone by, but before it got to the bottling machine it would have had to pass three people, and that if the inspectors had been at their duty they would have "caught that safety pin."

Under the above facts the jury could have found that the safety pin did not get into the bottle of coca-cola after it had been bottled and capped by the defendant; that is, that the condition of the bottle of coca-cola was not changed from the time it was bottled and capped by the defendant and placed in the vending machine until it was purchased and consumed by the plaintiff. In these circumstances the jury would have been authorized to find that the safety pin got into the bottle of coca-cola as the result of some one's negligence at or before the time it was bottled and capped. The evidence would have authorized the jury to find, under the doctrine of res ipsa loquitur, that the safety pin was bottled and capped in the bottle of coca-cola as the result of the defendant's negligence. See *Atlanta Coca-Cola Bottling Co.* v. *Dean,* 43 *Ga. App.* 682 (160 S. E. 105) ; *Atlanta Coca-Cola Bottling Co.* v. *Holbrook,* 40 *Ga. App.* 269 (149 S. E. 316) ; *Albany Coca-Cola Bottling Co.* v. *Shiver,* 63 *Ga. App.* 755, 759 (12 S. E. 2d, 114) ; *Cordell* v. *Macon Coca-Cola Bottling Co.,* 56 *Ga. App.* 117 (192 S. E. 228).

There is no merit in the contention of the defendant that there

was no evidence from which the jury would be authorized to infer that the plaintiff's illness was the result of becoming poisoned by drinking the bottle of coca-cola which contained the corroded brass safety pin. The case at bar is not like *Armour & Co.* v. *Gulley*, 61 *Ga. App.* 414 (3) (6 S. E. 2d, 165). In that case the plaintiff sought to recover for alleged food poisoning caused by eating a can of potted meat. The court said that because the plaintiff became sick from eating the meat would not warrant the conclusion that the meat itself was unwholesome and deleterious. There is quite a difference between the two cases. Potted meat is a food, and is presumed to be wholesome until facts authorizing a contrary conclusion appear. In such a case the mere fact that a person became sick sometime after eating the food would not authorize the conclusion that the food was unwholesome and likely to poison such person. Under the evidence in the present case, the corrosion from a brass safety pin is in itself an element which if taken into the stomach of a person and there coming in contact with hydrochloric acid would produce a poison known as zinc chloride. Therefore cases involving suits for damages growing out of alleged poisoning caused from eating unwholesome food are not analogous to the case at bar.

It appearing that a verdict for the plaintiff would have been authorized, the court erred in granting a nonsuit.

*Judgment reversed. Sutton and Felton, JJ., concur.*