# BENEVOLENT BURIAL ASSOCIATION INCORPORATED
## *v.* HARRISON, insurance commissioner.

No. 10577.   OCTOBER 3, 1935.

*G. G. Bower, J. H. Kirbo,* and *A. B. Conger,* for plaintiff in error.
*John R. Wilson, W. H. Miller, M. J. Yeomans, attorney-general, B. D. Murphy,* and *Dave M. Parker,* contra.

*Hendrix & Buchanan, Alexander & Jones,* and *Jeff A. Pope,* amici curiæ.

PER CURIAM. ■ The statute invoked by the defendant in its motion to dismiss has no application to a case of this kind. The petition alleged that the defendant was chartered by the superior court and was not an insurance company. Whatever else might be said of the act of 1914 (Ga. Laws 1914, p. 135, Park's Code (1914), § 2442(g), Code of 1933, § 56-223), it does not apply to a company which is chartered by a superior court and which is not authorized by law to do an insurance business in this State. This section was intended to protect legitimate insurance companies against a receivership until certain facts are made to appear and

the provisions of this statute are complied with by the complainant. The court did not err in overruling the motion. to dismiss. Furthermore, this motion became moot with the entry of judgment discharging the receiver.

■ Two substantial questions were raised by the general demurrer: (1) Did the petition show that the defendant, though not incorporated as an insurance company and having no authority to do an insurance business, was nevertheless engaged in the business of writing and issuing contracts which amounted in effect to policies of insurance? (2) Even if this question should be answered in the affirmative, was the comptroller-general, as insurance commissioner of Georgia, authorized by any law to institute an action to enjoin the conduct of such business? Attached to the petition was a copy of the form of application used by the defendant and upon which it issued certificates to customers. The application was as follows:

"BENEVOLENT BURIAL ASSOCIATION INC. APPLICATION BLANK

"This corporation has complied with the laws of Georgia.

"HOME OFFICE: BAINBRIDGE, GA. Date————————193——

"Name John Doe        Address, Bainbridge, Ga.

Name Mrs. Maud Doe         "            "

Name Lucile Doe            "            "

Name George Doe            "            "

Name Frank Doe             "            "

Name Mabel Doe             "            "

Name Julia Doe             "            "          •

Name John Doe, Jr.         "            "

Name Marie Doe             "            "

"We, the above named, do hereby make application for one shares of stock in the Benevolent Burial Association Inc. We have paid the amount of $1.75. Each share of stock entitles the holder or any member of his immediate family to a Christian burial of $100, the names of whom are incorporated in this application. Each share of stock is to be paid for as follows: $1.75 with application; monthly installments of 50 cents per share.

"Salesman Richard Roe. Signed John Doe."

Also attached to the petition was a copy of the burial or stock certificate issued by the company in pursuance of such application. This certificate was in the following form:

"Number 300                                            Shares 1

"THE BENEVOLENT BURIAL ASSOCIATION INCORPORATED.

"Incorporated under the laws of Georgia. BAINBRIDGE, GEORGIA.

"This certifies that John Doe is the owner of one shares, without par value, of the capital stock of The Benevolent Burial Association Incorporated, transferable only on the books of this corporation in person or by attorney upon surrender of this certificate properly endorsed in accordance with and subject to the by-laws, rules, and regulations of said association.

"In witness whereof the said corporation has caused this certificate to be signed by its duly authorized officers and its corporate seal to be hereunto affixed. This 10th day of May, A. D., 1934. (Corporate Seal)

"Lillie B. Edge, Secretary.    J. J. Edge, President."

These allegations with the exhibits, when considered on general demurrer, were sufficient to show that the defendant was actually engaged in the business of writing insurance contracts without having been chartered as an insurance company and without any authority of law to engage in such business. A discussion of the law applicable to this phase of the case will be deferred to the third division of this opinion, where the evidence in support of the petition will also be considered. The comptroller-general, as insurance commissioner of Georgia, was authorized to maintain the action. Section 4 of the act of 1912 (Ga. L. 1912, p. 119) provides: "It shall be the duty of the insurance commissioner to issue license to the insurance companies and agents when they shall have complied with the requirements of the laws of this State and the rules and regulations prescribed by the commissioner, so as to entitle them to do business. In each case, license shall be issued under the seal of the commissioner, authorizing and empowering the person, firm, association, or company to transact the kind of business specified in the license. Before an insurance company shall be licensed to transact business in this State, the insurance commissioner shall be satisfied by such examination as he may make, or such evidence as he may require, that such company is duly qualified under the laws of this State to transact business herein." By section 6 it is declared that all persons shall be required to procure a license from the Department of Insurance before soliciting business in this State, except those agents

whose names are furnished the commissioner by some reputable insurance company as its accredited agent. By section 13 it is made the duty of the insurance companies to comply with such reasonable rules and regulations as may be prescribed by the insurance commissioner. Section 29 declares that whenever any domestic life-insurance company has wilfully violated its charter or any law of this State, the commissioner may apply to the circuit court, that is, the superior court, for an order directing the company to show cause why the commissioner should not take possession of its property and conduct its business, and for such other relief as the nature of the case, the interest of the policyholders, creditors, stockholders, or the public may require, and on such application the court may in its discretion issue an injunction restraining the company from the transaction of its affairs or disposition of its property until further order of the court. The Code of 1933, § 56-902, provides: "Contracts of life insurance may be taken only by persons or corporations specially authorized by law so to do." Section 1 of the act of 1912, above referred to, creates in the office of the comptroller-general a department which shall be called the insurance department of the State, and which shall be charged with the enforcement of the laws relating to insurance, the chief officer of this department being the comptroller-general, who shall be styled the insurance commissioner. The comptroller-general as such commissioner being, as the head of the insurance department, charged with the enforcement of the laws relating to insurance, this officer would have authority, under the other provisions of the law as quoted above, to institute a suit for injunction to prevent any company from conducting an insurance business contrary to law, regardless of the legal character of such company as determined by its charter. The provisions that contracts of life insurance can be taken only by persons or corporations specially authorized so to do by law, and that the comptroller-general as insurance commissioner shall be charged with the enforcement of the laws relating to insurance, are sufficient to authorize that officer to maintain the present action on the allegations made.

■ The final question for determination is whether the evidence was sufficient to support the allegations of the petition, and to authorize the grant of the interlocutory injunction. The contents of the application and of the burial or stock certificate have

been stated in division 1 above. These documents were introduced in evidence, and must be considered with the following additional evidence introduced by the plaintiff: The petition for charter obtained by the defendant company contained the following allegations with reference to the business to be conducted by such company: "(3) The object of the corporation is benevolent, charitable, and co-operative, but not pecuniary, but to establish a sufficient mutual fund for each of its stockholders to provide a Christian, inexpensive, certain co-operative burial for each of its stockholders at death. (4) The capital stock of said corporation shall be one thousand shares, with the privilege of increasing same to as much as one hundred thousand shares by a vote of the majority of the stock outstanding at the time. Said shares of stock shall be of no par value, and each and all of said shares of stock shall be assessable by by-law or resolution of said corporation, and each share or certificate of stock may represent in favor of the owner or holder thereof a burial benefit as determined by the by-laws of said corporation, and may be taken up and canceled by said corporation after providing a funeral or burial equivalent to the value thereof. Each certificate of stock matures only at the death of said holder and owner and only upon surrender thereof to this said corporation, which is made the sole agent of the owner and holder thereof in converting the same at the death of the owner and holder thereof into the benefit of a funeral according to the by-laws of said corporation. Said share of stock can be liquidated only by and through this said corporation providing and conducting said funeral or burial benefit. (5) Petitioners desire the right to have the subscriptions to said capital stock paid in money, by assessments, or property to be taken at a fair value. Each share of capital stock entitles the owner or holder thereof to one vote in the affairs of the corporation. (6) Petitioners desire the right to issue the full amount of the capital stock of said corporation at once or as it may be subscribed and paid for either in installments or by assessments prescribed by the by-laws of said company afterwards adopted; said by-laws may prescribe the manner, dates, commodity, amounts, contingencies, necessities, of such installments and assessments, and that they may be credited on the shares or certificates of stock. (7) Petitioners desire to sue, plead, be sued, impleaded, to have and use a common seal, to make

all necessary by-laws, rules and regulations, and to do all things that may be necessary for the successful carrying on of said business securing to the shareholders the burial benefits, including the right to borrow money and secure the same with necessary written instruments, to sell, hold, and deal in funeral and burial supplies, monuments, vaults, tombstones, caskets, robes, real estate, personal property, burial grounds, cemeteries, certificates of rights to burial aid and benefits, to levy and collect assessments and installments of money against the stock of stockholders in said corporation, and to do all things necessary and suitable to the purposes of said corporation; to execute notes, bonds, burial benefits, certificates of stock, and evidences of obligations incurred and to be incurred, and secure the same with suitable instruments such as mortgages, security deeds, and other liens.''

In referring to the applications and the certificates issued thereon, and to the nature of the business conducted by and through them, the petition alleged the following: ''6. Petitioner alleges that upon the payment of $1.75 the defendant herein issues its said certificate in the form of a stock certificate in said company; and although said certificate does not within itself state that it is good for anything, or what it entitles the holder to, the charter, by-laws, rules and regulations of said defendant company show that it entitles the owner or any member of his immediate family to a Christian burial of the value of $100, only at the death of the member or owner, and only upon the surrender of the certificate to the defendant corporation, and only providing said assessment of 50 cents per month has been paid by the owner of said certificate each and every month. 7. Petitioner alleges that said defendant sells said certificates to the white public generally upon the representation that the same will entitle not only the holder of the same to a Christian burial of the value of $100, but the same will entitle any member of his immediate family to a Christian burial of the value of $100, provided said member is in good standing by having kept his said monthly assessments of 50 cents paid up. 8. Your petitioner alleges that even though said certificates are issued by defendant as stated in the foregoing paragraph, that according to the practice of said defendant said certificate matures only at the death of the owner of said certificate or the first death of any one member of his immediate family, and is not good for

but one of said funerals. . . 10. Your petitioner alleges that according to the charter, by-laws, practice, rules and regulations of said defendant, that none of said certificates can-be redeemed, canceled or taken up by any of the owners of said certificates in any way until the death of the owner of said certificate, or the first member of his immediate family, and only then by said defendant providing a funeral or burial to said owner of said certificate, or to the first member of his immediate family who may die, of the alleged value of $100, and provided the owner of said certificate has kept his said monthly assessments of 50 cents paid up. That said provisions are identical with the requirements and provisions of life-insurance policies. 11. Your petitioner alleges that according to the charter, practice, rules and regulations of said defendant, that said defendant is made the sole agent of the owner and holder of said certificates thereof in converting said certificate at the death of the owner or the first member of his immediate family into the benefit of a funeral, and that no other person or persons can furnish or provide said funeral except said defendant, whose officers are one and the same persons as the owners and proprietors of the J. J. Edge Funeral Home with its principal office and place of business in the same location and in the same building. . . Petitioner alleges that the business carried on by the defendant, under the guise of the Benevolent Burial Association Inc., is in law and in fact nothing more or less than a life-insurance business."

Three of the by-laws are as follows: , "Section 5. Each share of stock may be delivered to a subscriber upon payment of one dollar and seventy-five cents, and upon thereafter the payment of fifty cents per month; such stock may remain in possession of subscribers, and may be exchanged at his death pro tanto for the purchase of an equivalent funeral. The regular payment of fifty cents per month for fifteen years shall entitle the holder to a paid-up certificate of stock. Section 6. Shares of the capital stock of the Benevolent Burial Association Incorporated. Same has no par value, each share now sells for and represents $100 payable in mortuary merchandise through the Benevolent Burial Association, or their authorized representative, when and at the time of death of one of the shareholders or co-shareholders. They have the privilege of converting the paid-up value of said stock

in mortuary merchandise. . . Article 9. Dividends may be declared and paid out of the surplus profits of the company as often and at such time as the directors may determine."

The Code of 1933, § 56-901, declares: "A life-insurance policy is a contract by which the insurer, for a stipulated sum, engages to pay a certain amount of money if another shall die within the time limited by the policy. The life may be that of the insured or of another in the continuance of whose life the insured has an interest." Under a narrow construction of this section, a contract is not a policy of insurance unless it is payable in a certain amount of money; but this section does not purport to say that such is the only kind of contract that can be considered as an insurance policy. The provisions of this section are not exhaustive, and it can not be said that a policy payable, not in money, but in something of value as the equivalent of money must for that reason alone be excluded from classification as an insurance contract. A contract may be one of insurance, though payable in goods or services of value. 14 R. C. L. 893, § 2. "Whether or not a contract is one of insurance is to be determined by its purpose, effect, contents, and import, and not necessarily by the terminology used, and even though it contain declarations to the contrary"—citing Southern Surety Co. v. Austin (Tex. Civ. App.), 17 S. W. (2d) 774, 776; Allin v. Motorists Alliance, 234 Ky. 714 (29 S. W. (2d) 19, 23, 71 A. L. R. 688). "Nor is it essential that loss, damage, or expense indemnified against necessarily be paid to the contractee. It may constitute insurance if it be for his benefit, and a contract on which he, in case of a breach thereof, may assert a cause of action"—citing note in 63 A. L. R. 715. State ex rel. Landis v. De-Witt C. Jones Co., 108 Fla. 613 (147 So. 230), quoting from National Auto Service Cor. v. State (Tex. Civ. App.), 55 S. W. (2d) 209. The business which the company is actually carrying on, and not the mere form of its organization, is the test for determining whether it is an insurance company within the law applicable to such companies. State ex rel. Reece v. Stout, 17 Tenn. App. 10 (65 S. W. (2d) 827). The promoters of this company are presumed to have drawn its petition for charter, and the company, through its stockholders, or others acting for it, is presumed to have prepared the by-laws and the forms of the application and of the burial or stock certificate through which it con-

ducted business. In these circumstances, the documents and papers must all be construed most strongly against the company and most favorably to the customer, provided they are ambiguous and open to more than one construction. "If a contract is of doubtful meaning, it is to be construed against the party who drew it." *Wilcox* v. *Owens,* 64 *Ga.* 601(2) ; *Hill* v. *John P. King Mfg. Co.,* 79 *Ga.* 105 (3 S. E. 445) ; *Moorefield* v. *Fidelity Mutual Life Ins. Co.,* 135 *Ga.* 186 (69 S. E. 119) ; *Johnson* v. *Mutual Life Ins. Co.,* 154 *Ga.* 653 (115 S. E. 14).

The terms of the contracts would in themselves be more favorable to the members of the public who deal with this company, if construed as contracts of insurance, than if interpreted as contracts of investment or deposit only. If one of the contracts, when construed with the charter, by-laws, and the conduct of the defendant, would, in case of a death to which the contract was applicable, entitle the holder to demand of the defendant mortuary service or merchandise to an amount not exceeding the sum actually paid in by the holder, the contract would contain no element of insurance, and the defendant in issuing such contracts would not be engaged in the insurance business. If on the other hand the contract should be construed as entitling the holder to a funeral benefit of the value of $100 at the death of any person covered thereby, regardless of whether the certificate has been fully paid up, and regardless of the amount paid by the holder before the death, provided only such payments shall have been regularly made before the occurrence of such event, the contract would then be in substance and effect a contract of life insurance, and the company in issuing the same would be engaged in the life-insurance business. In such case it would be immaterial that the benefit was paid in mortuary service or merchandise and not in money. The petition was introduced in evidence, and should have some weight as to the manner in which the defendant conducted its business and treated these contracts. It can not be said as a matter of law that the contracts, when construed with the charter and by-laws, should be construed as providing a mere form of investment, or as simply evidencing an advancement or a deposit on the cost of a funeral. For the defendant the most that can be said is that the contracts are ambiguous on the question of whether they should be treated as having a value commensurate with the amount paid

in, or as securing to the holder the element of a life-insurance policy. Such being the case, they should, under the proper rule of construction, be given a meaning most favorable to the holder and least favorable to the company on this question. Under all the circumstances the judge did not err in concluding that the company was engaged in the insurance business in issuing these contracts, or in granting an interlocutory injunction to prevent the further conduct of such business. Similar contracts have been construed by other courts, and have been held to be insurance contracts. See Sisson v. Prata Undertaking Co., 49 R. I. 132 (141 Atl. 76); Renschler v. State, 90 Ohio St. 363 (107 N. E. 758, L. R. A. 1915D, 501, Ann. Cas. 1916C, 1014); State v. Willett, 171 Ind. 296 (86 N. E. 68, 23 L. R. A. (N. S.) 197); State ex rel. atty.-gen. v. Wichita Mutual Burial Asso., 73 Kan. 179 (84 Pac. 757); State v. Bean, 193 Minn. 113 (258 N. W. 18); State v. Spalding, 166 Minn. 167 (207 N. W. 317).

*Judgment affirmed. All the Justices concur except Russell, C. J., absent for providential cause.*

GILBERT, J., concurs in the result.