28403.    MATTHEWS *v.* GULF LIFE INSURANCE CO.

DECIDED NOVEMBER 30, 1940.    REHEARING DENIED DECEMBER 18, 1940.

*P. T. Hipp,* for plaintiff.

*J. R. Terrell Jr., C. W. Hager, J. F. Kemp, J. D. Tindall Jr.,* for defendant.

GARDNER, J.    George H. Matthews brought an action against the Gulf Life Insurance Company to recover $420 principal besides interest, damages, and attorney's fees, under the provisions of a life-insurance policy issued on the life of his son, George E

Matthews, and naming himself the beneficiary, for the double-indemnity benefits arising on the death of the insured from injury "caused solely by external, violent, and accidental means." He alleged that the insured, at "about 10:30 o'clock a. m., on the 21st day of May, 1937, about three miles east of Hogansville, Georgia, and near Blue Creek, . . was accidentally and unintentionally shot with a pistol or rifle in the hands of unknown parties without fault of insured, and that said pistol or rifle shot made an external wound in the chest of the insured, the bullet having pierced the insured's chest and heart causing visible, ugly, and external wound on the chest of the insured which then and there caused" his death; that the defendant paid the main death benefit of $420 and refused to pay the remaining double-indemnity feature, for which the action was brought. While the plaintiff made other allegations we deem the above sufficient for consideration of the assignments presented. The defendant denied that it was indebted in the double-indemnity sum claimed, for the reasons, first, that it had paid all claims arising under the contract when it paid $420 in full settlement and took the following receipt: "Received of the Gulf Life Insurance Company, Jacksonville, Florida, the sum of $420, the same being [according to the pleadings] in full satisfaction and final settlement of all claims and demands existing under the within policy," but, according to the evidence, "in full and final settlement of all claims under the within policy terminated by death;" and, second, because there was no maturity of the provisions as to double indemnity, which would entitle the plaintiff to the recovery sought, where the injury causing death had to be inflicted "solely by external, violent, and accidental means, . . independently and exclusively of all other causes, [and] evidenced by a visible wound or contusion on the exterior of the body," but where the policy further provided that the "said additional sum shall not be payable if the insured's death results from . . bodily injury inflicted by the insured himself, while sane or insane, or [as contended in the instant case] intentionally by another person."

The jury returned a verdict for the defendant. The case is before this court on assignments of error presenting two questions which we think merit consideration; first, whether the court erred in charging the law of compromise on the issue whether the defendant had settled *all* claims arising under the policy when it paid to

the plaintiff the face amount of the policy and received a receipt that the payment was in full settlement of all claims arising thereunder; and, second, whether there was sufficient evidence legally to support the verdict.

The evidence material to a consideration of these questions was substantially as follows: George E. Matthews was insured with the defendant in the sum of $420 payable in the event of death. The plaintiff, father of the insured, was the beneficiary. The policy carried a double-indemnity feature providing for the payment of a like sum in the event the injury causing death was "solely by external, violent, and accidental means [where] evidenced by a visible wound or contusion on the exterior of the body, . . independently and exclusively of all other causes, [provided such] additional sum shall not be payable if the insured's death [resulted from] bodily injury inflicted by the insured himself, while sane or insane, or intentionally by another person." The company, in the person of its local superintendent, on July 2, 1937, advised the beneficiary: "I was in the district office Thursday and at that time talked with the manager with reference to your claim. He states that the company is perfectly willing to meet all claims and make payments exactly as our contracts call for, and under the circumstances we are liable only for $420. If it is proven that the death occurred accidentally we will be only too glad to pay double the amove amount." Thereafter, in September, 1937, the company took the following receipt, which the beneficiary admitted signing: "Received from the Gulf Life Insurance Company of Jacksonville, Florida, the sum $420, the same being in full and final settlement of all claims under the within policy terminated by death." According to the beneficiary: "Agreement was when I signed it, it was just for the other to give them more time. . . I signed this on the policy. It is for the payment of $420. That is the face amount of this policy. They did not pay me any more than $420. . . Mr. Terrell was asking me about who I had arrested, not at any time did they pay me anything for any double indemnity on that policy."

The insured was killed about 10 o'clock, a. m., May 21, 1937, by a pistol or rifle when traveling the Blue Creek Road and about three miles from Hogansville, when at that time he was supposed to have in his bill-fold $75 or $80. Further, according to the plaintiff:

"I don't know how long he had been dead when I got to him. I imagine he had been dead over 40 minutes. I got there immediately after he died. When I got there I found the car in the ditch, which showed he had taken the ditch. . . He took the ditch as he gradually came down and the car started to going on the right-hand side to the ditch about the distance from here to the wall and it just gradually taken the ditch. And he was lying over on the right-hand side on his back. He was on the left side and laying over on the right side, which showed his hands had just come loose from the steering wheel, and he had his right foot hung between the gear lever and the accelerator and his left foot hung on the gear clutch. That was near a creek." A short distance after he crossed the creek "He just began to drift to the ditch about as far as from here to that wall before it went in the ditch. I found a wound on him. The wound seemed to be through his heart. It was a bullet wound. . . When I raised him up he bled free. . . I thought that the car was wrecked, but there was no bruises on it from running in the bank. . . I pulled his vest and shirt back and found the bullet wound. I do not know whether it was a rifle or a pistol that the bullet came from. The bullet went through him. It lodged in the car. It hit the left-hand door. He was shot from the right-hand side of the automobile." The plaintiff and others looked for a gun, but found none, either in the car or around the car, or around the edge of the road or about the creek. "It was a mighty ragged wound in his chest. There wasn't either door open. . . I didn't find any bruises about his face. His lips had a kind of bruised place. . . I remember pulling [the shirt] back and finding the bullet wound. I found his change purse in his left-hand pants pocket, . . about $7 in change. I didn't find his pocket book. I didn't find his bill-fold. Pierce Smith handed his bill-fold to me. I don't know where he found it [which] was empty when he handed it to me . . was closed up. . . $75 or $80 . . was the amount of money that customarily he would have had in the bill-fold at that time. . . Sometimes is wasn't in the bill-fold." The plaintiff could not definitely say as to the bruises on the lip or face, or whether the bruised places were made by one's fist or metal or a stick, or by the steering wheel. The plaintiff tried unsuccessfully to prosecute two men for the murder of his son. "I had warrants issued. . .

I charged these two men with murder on suspicion. . . They were seen with him last. I do not think they had any motive for killing my son. I didn't know that their motive for killing my son was robbery. . . As to my thinking it was any accidental killing, well, that is something I have never learned, something I am trying to find out the hardest in the world." The two men were released on commitment hearing for want of evidence. "We couldn't get the evidence against any one. . . No one has ever been indicted by the grand jury."

The defendant introduced as documentary evidence paragraph 3 of the original petition (later stricken by amendment) which we quote in the material part as follows: "The said insured . . was suddenly and without notice or warning by a party or parties unknown, and plaintiff charges on information and belief for the sole purpose of robbing the said George E. Matthews, deceased, and that the said insured was accidentally and unintentionally shot with a pistol or rifle in the hands of unknown parties without fault of insured."

■ "A life-insurance policy is a contract by which the insurer, for a stipulated sum, engages to pay a certain amount of money if another shall die within the time limited by the policy." Code, § 56-901. The payment of the amount named in the face of the policy, in the event of the death of the insured within its terms, is the prime purpose of the contract. *Farrow* v. *State Mutual Life Insurance Co.,* 22 *Ga. App.* 540, 543 (96 S. E. 446) ; *Eminent Household of Columbian Woodmen* v. *Bryant,* 59 *Ga. App.* 283 (3) (200 S. E. 321) ; *Plumer* v. *Bankers Health & Life Insurance Co.,* 62 *Ga. App.* 352, 354 (8 S. E. 2d, 97). In the instant case the prime purpose of the contract, that of paying $420 in the event of death, matured instantly, within the terms of the contract, on the death of the insured. An absolute obligation to pay arose within its terms. Under the evidence it appears conclusively that the defendant recognized this, and did not deny the obligation or challenge the payment or defer payment arbitrarily. On July 2, 1937, less than sixty days from the death of the insured, the company, through its local superintendent, advised the beneficiary that "the company is perfectly willing to meet all claims and make *payments exactly* as our contracts call for and under the circumstances, we are liable only for $420. If it is proven that the death occurred accidentally

we will be only *too glad* to pay double the above amount." (Italics ours.) At no time does it appear that the defendant was denying that it was due the beneficiary $420 as the principal death benefit, or that it would not pay it *exactly* as the contract provided for. It advised in its letter that it would so pay. Further, it was not appearing that it was for any reason deferring this payment. We think the evidence demands a finding that the company was recognizing and discharging this particular obligation, *exactly,* in full. But the policy provided also that an additional sum of $420 would be due the beneficiary if the death occurred accidentally within the terms of the policy. In manifesting its willingness to pay *exactly* as the contract called for, it unequivocally and unconditionally denied that it was due an additional sum of $420 to represent the double indemnity arising because of accidental death, but indicated that, in good faith, it would be "perfectly willing [to] make payments exactly as our contracts call for, [and] if it is proven that the death occurred accidentally we will be *only ·too glad* to pay double the amount."

The evidence disclosed that the beneficiary suspected two men last seen with the insured, of his death, but was unable to produce any evidence to that effect, or to connect any one with the crime of shooting the deceased. Under the good faith in which the company indicated it would act, it delayed paying the death benefit only by about three and a half months, apparently in the meantime making investigations to determine whether it could be "proven" that the death occurred accidentally within the terms of the policy, in order that it might pay "exactly" according to its terms that which it would be "only too glad" to do. But upon making payment of the $420 in *exact* amount of the *death claim,* its admitted and unquestioned obligation, it took the receipt on the back of the policy to read: "Received from the Gulf Life Insurance Company of Jacksonville, Florida, the sum of $420, the same being in full and final settlement of all claims under the within policy terminated by death." This receipt, to show accord and satisfaction, is not conclusive. *Rhodes & Son Co.* v. *Outcault Advertising Co.,* 135 *Ga.* 516 (69 S. E. 705); *Armour & Co.* v. *Ross,* 110 *Ga.* 403 (7) (35 S. E. 787). The letter of perfect willingness to pay *exactly* according to the terms of the policy, to include the double-indemnity sum of $420, should it be *proven* that the death occurred acci-

dentally within its terms, and the receipt, must be considered together to determine whether there was an accord or agreement by the company to pay, and the insured to accept, a sum of $420 in *cash* as settlement of all obligations singly and severally thereunder, and thereby discharge the defendant; and specifically to determine whether the consideration to the plaintiff for accepting the sum offered, or any lesser sum for that matter, was, not that he was being paid that to which he was entitled, but that he was getting the *actual cash* to settle his claims, whatever the amount being paid. If it were such a payment, then its payment, whether it was for $420 or a lesser sum, to discharge the policy, would work a complete accord and satisfaction and absolve the defendant from further liability under its contract.

Code, § 20-1204, provides: "An agreement by a creditor to receive less than the amount of his debt can not be pleaded as an accord and satisfaction, unless it be actually executed by the payment of the money, or the giving of additional security, or the substitution of another debtor, or some other new consideration." In *King* v. *Liberty National Life Insurance Co.*, 59 *Ga. App.* 496 (1 S. E. 2d, 223), it was held: "In the absence of fraud, accident, or mistake, where parties enter into an agreement whereby the creditor agrees to accept a sum less than the amount claimed to be due, and actually accepts such smaller sum in satisfaction of the entire claim with knowledge of all the facts, the settlement is binding whether there is a dispute as to the part of the debt which is relinquished or not." The court held further, page 497: "It is too well settled to require citation of authority that the settlement of a disputed claim is a sufficient consideration for an accord and satisfaction. Even if there had been no bona fide dispute, under the Code, § 20-1204, the acutal payment and acceptance of a lesser sum than due would be binding if done with the understanding that the claim would thereby be satisfied." Supporting this view the court further cited *Burgamy* v. *Holton*, 165 *Ga.* 384 (141 S. E. 42), which held that, from the Code section above set out, "It would seem that the agreement of the creditor to receive less than the amount of his demand, and the payment of money thereunder, is a sufficient consideration for such agreement, and stands upon the same footing as 'the giving of additional security, or the substitution of another debtor, or some other new consideration.'" But

no such payment was made in the instant case. There is no evidence whatever, other than the receipt, to show that there was an accord or agreement or understanding that for *cash* the plaintiff was foregoing all claims, in order to receive a *settlement for cash,* when it would be precluded from further claim under the provisions of Code, § 20-1204. Moreover, it further appears that the plaintiff testified, and it was not denied, that while he signed the receipt voluntarily the "agreement was when I signed it, it was just for the other to give them more time. . . I signed this on the policy. It is for the payment of $420. That is the face amount of this policy. They did not pay me any more than $420. . . Mr. Terrell was asking me about who I had arrested, not at any time did they pay me anything for any double indemnity on that policy."

The evidence, considered in its interrelation, demands a finding that at the time of the payment of the money and execution of the receipt there was no *agreement* by the one to pay, and the other to receive, the sum of $420 in final and complete extinguishment of *all* claims under the policy. Accordingly, any provision of the receipt, pleaded as accord and satisfaction and as satisfaction of the double-indemnity claim, was without consideration and must be treated as nudum pactum. We think the well-considered language in *Pan-American Life Insurance Co.* v. *Bagley, 55 Ga. App.* 610, 614 (191 S. E. 144), quoted from Buel *v.* Kansas City Life Insurance Co., 32 N. M. 34 (250 Pac. 635), applicable in the instant case: "In the case at bar it can not be questioned that the parties agreed, by the policy, upon the amount of the indemnity. There never was dispute as to liability [for the face amount of the policy] because of the death of the insured. There was dispute as to any liability for accidental death, but none as to the amount to be paid if the death were accidental. By the payment made, appellee obtained nothing to which she was not entitled, and appellant gave up nothing it could rightfully retain. If the claims were to ·be considered separately the death claim was liquidated and undisputed; the accident claim liquidated and disputed. If it be treated as a whole, the larger amount was liquidated, and the smaller amount paid was conceded. However viewed, we find it impossible to locate the consideration for the release of the amount here sued for." See *Rhodes & Son Co.* v. *Outcault Advertising Co.,* supra; *National Duck Mills* v. *Catlin,* 10 *Ga. App.* 240 (2) (73 S. E.

418); *Smith* v. *Cherokee Fertilizer Co.,* 24 *Ga. App.* 277 (100 S. E. 719); *DeVaughn* v. *Rothschild,* 14 *Ga. App.* 660 (2) (82 S. E. 152); *Armour & Co.* v. *Ross,* supra.  The court erred in charging on the law of compromise.

■ The policy provided, in addition to indemnity in the event of death, for a further sum equal to the face of the policy should the insured die from injuries received solely by external, violent, and accidental means where they were evidenced by visible wounds or contusions on the exterior of the body, and where the death by accident was independent and exclusive of all other causes, provided, however, the injuries were not inflicted by the insured while sane or insane, or intentionally by another person.  Under the evidence it appears that the insured died from injuries, independent of all other causes, inflicted by a pistol or rifle; that the wound was visible on the exterior of the body, and that the means by which it was inflicted were external and violent.  But we look to the evidence to determine whether, literally, the wound was made on the body of the insured, either by the intentional aim and design of another, or by the accidental shooting of the weapon in the hands of another without any intention to shoot the insured.  There was no witness who saw the shooting to testify as to its character of occurrence. There was no pistol or gun found at or in the vicinity of the shooting.  There was, however, an empty bill-fold of the insured, found near the car, which was not known to have contained money.  If the insured was robbed, it does not appear that the killing took place in order that the assassin might rob the insured, as it does not further appear that the robbery, if any, was not committed by another immediately subsequent to the shooting, without any connection therewith.  It does not appear that the insured was not accidentally or carelessly killed by one hunting along the creek, or otherwise discharging his gun without reference to the insured or his presence along the road.  All evidence indicating the literal character of the shooting, whether intentional or accidental, was circumstantial.

The provision of the policy absolving the defendant from liability should the insured be intentionally killed by another person is an exception to the principal provision providing for indemnity in the event of accidental death.  The burden was on the insurer to prove the death intentional and within the exception.  *Pan-American*

*Life Insurance Co.* v. *Bagley,* supra, 610, 614; *Gaynor* v. *Travelers Ins. Co.,* 12 *Ga. App.* 601 (5) (77 S. E. 1072). If the plaintiff's evidence showed this it would in that event inure to the benefit of the defendant, regardless of whether there was any pleading or evidence to this effect by the insurer. This burden must be carried by a preponderance of the evidence. While the evidence proved death by a pistol or rifle, and raised a suspicion of shooting for the purpose of robbery, this evidence, being circumstantial, did not, as required, reasonably establish the theory that the shooting was intentional for the purpose indicated, or for any other purpose to show intentional shooting, and did not preponderate to that theory rather than to any other reasonable hypothesis. The inferences drawn from this circumstantial evidence could not as a matter of law support a finding that the defendant had carried the burden of proving the exception pleaded as absolving it from liability. For the defense to prevail, as to the exception pleaded "the facts shown must not only reasonably support" the conclusion that the shooting was intentional within the terms of the policy, "but also [must] render less probable all inconsistent conclusions." *Georgia Railway & Electric Co.* v. *Harris,* supra; *Armour & Co.* v. *Gulley,* 61 *Ga. App.* 414 (3), 419 (6 S. E. 2d, 165).

Accordingly, we hold that there was no evidence to support the defense of intentional shooting by another, and this, notwithstanding the allegation of the plaintiff that the shooting was "unintentional" or notwithstanding the original allegation, subsequently stricken, that to the best of plaintiff's information and belief the insured was shot accidentally by unknown parties with intent to rob. The allegation that the shooting was unintentional by another did not relieve the defendant of the necessity of proving the same as an exception to the principal provision rendering it liable in the event of accidental death. The rule would have been different had it been necessary, to support a cause of action, that this allegation should have been made in support of the principal provision as to the accidental death, and not in support of the exception to this provision. The evidence of the defendant that the plaintiff had originally pleaded that the purpose of accosting the insured was robbery, though the actual shooting was accidental, did not serve to support and establish the defense of intentional shooting where there were yet no facts on which to base this element of the shooting.

The evidence demanded a verdict for the plaintiff (except as to damages and attorney's fees), and the court erred in overruling the motion for new trial. Under our view the remaining assignments of error are without merit.

*Judgment reversed. MacIntyre, J. concurs.*

BROYLES, C. J., dissenting. I think that the verdict was authorized by the evidence, and that the judgment should be affirmed.

ON MOTION FOR REHEARING.

GARDNER, J. The opinion having been modified responsively to the motion for rehearing, the motion is denied. *MacIntyre, J., concurs. Broyles, C. J., dissents.*