29098. GULF LIFE INSURANCE CO. *v.* MATTHEWS.

DECIDED OCTOBER 18, 1941. REHEARING DENIED NOVEMBER 18, 1941.

*J. R. Terrell Jr., J. D. Tindall, Clint W. Hager, J. F. Kemp,* for plaintiff in error.

*Duke Davis, P. T. Hipp,* contra.

SUTTON, J. ■ George H. Matthews, as beneficiary, brought suit against Gulf Life Insurance Company for $420 principal, besides interest, damages, and attorney's fees, under the provisions of a life-insurance policy issued on the life of his son, George E. Matthews, which provided for double indemnity in case of the death of the insured by accidental death, caused solely by external, violent, and accidental means, but further providing that "It is mutually agreed that said additional sum shall not be payable if the insured's

death results from . . bodily injuries inflicted by the insured himself, while sane or insane, or intentionally by another person." On the trial of the case it was shown that the company had paid the death claim, but refused to pay the amount of double indemnity, contending that the death of the insured was caused by intentional shooting on the part of an unknown third person. Upon the conclusion of the evidence the jury returned a verdict for the defendant and judgment was entered accordingly. The judgment was reversed by this court in *Matthews* v. *Gulf Life Insurance Co.,* 64 *Ga. App.* 112 (12 S. E. 2d, 202), to which reference may be had for a statement of the pleadings and the evidence.

On the second trial of the case the court, applying the rulings made on the first appearance of the case before this court, directed the jury to return a verdict for the plaintiff for $420 and accrued interest calculated from the date of the plaintiff's demand for payment, and submitted to them the question of the bad faith of the defendant. The jury returned a verdict for $420 principal, $107.80 interest, and $200 attorneys' fees, with costs of suit. The defendant filed a motion for new trial on the general grounds and by amendment added several special grounds. The court overruled the motion and the exception here is to that judgment.

The evidence on the last trial of the case was substantially the same as that introduced on the first hearing, with additional testimony from a county policeman that on the night when the insured was found in a stalled automobile on a country road, dead from a pistol or rifle-shot wound over his heart, he went to the scene and that it looked like there had been a scuffle in the car, and testimony from the county sheriff that upon going to the scene he noticed that part of the upholstering on the car door was pulled loose and the glove compartment in the car was open. In the former decision of this case it was ruled: "The provision of the policy absolving the defendant from liability should the insured be intentionally killed by another person is an exception to the principal provision providing for indemnity in the event of accidental death. The burden was on the insurer to prove the death intentional and within the exception. *Pan-American Life Insurance Co.* v. *Bagley,* [55 *Ga. App.* 610 (191 S. E. 144)]; *Gaynor* v. *Travelers Insurance Co.,* 12 *Ga. App.* 601 (5) (77 S. E. 1072). If the plaintiff's evidence showed this it would in that event inure to the bene-

fit of the defendant, regardless of whether there was any pleading or evidence to this effect by the insurer. This burden must be carried by a preponderance of the evidence. While the evidence proved death by a pistol or rifle, and raised a suspicion of shooting for the purpose of robbery, this evidence, being circumstantial, did not, as required, reasonably establish the theory that the shooting was intentional for the purpose indicated, or for any other purpose to show intentional shooting, and did not preponderate to that theory rather than to any other reasonable hypothesis. The inferences drawn from this circumstantial evidence could not as a matter of law support a finding that the defendant had carried the burden of proving the exception pleaded as absolving it from liability. For the defense to prevail, as to the exception pleaded 'the facts shown must not only reasonably support' the conclusion that the shooting was intentional within the terms of the policy, 'but also [must] render less probable all inconsistent conclusions.' *Georgia Railway & Electric Co.* v. *Harris,* [1 *Ga. App.* 714 (57 S. E. 1076)]; *Armour & Co.* v. *Gulley,* 61 *Ga. App.* 414 (3), 419 (6 S. E. 2d, 165)." This court there ruled that there was no evidence to support the defense of intentional shooting by another, and that a verdict was demanded as a matter of law for the plaintiff. The testimony of the two officers, above mentioned, does not take the case out of the rulings heretofore made as the law of the case. Accordingly, the trial court did not err in directing the jury to return a verdict for the plaintiff for the principal amount of $420 with interest.

■ Special ground 1 of the motion for new trial assigns error on the direction of the verdict, and special ground four complains that the court erred in charging the jury that under the rulings of this court on its former appearance here it was the duty of the court to direct that the jury find a verdict in favor of the plaintiff for the principal amount sued for with accrued interest. For reasons shown in the first division of this opinion-the direction of the verdict in the respects mentioned was proper, and these grounds of the motion are without merit.

Special ground 2 complains that the court erred in submitting to the jury the question of damages and attorney's fees, in that the evidence did not show a demand, as required by law, sixty days before the bringing of the suit, and special ground five assigns error

on an excerpt of the charge of the court in submitting to the jury the question of damages and attorney's fees, the same contention being made as in ground two. The evidence showed that the insured died on May 21, 1937, and that in a few days thereafter the plaintiff brought the fact to the attention of the company. He testified: "I claimed double indemnity at the time I filed the claim." The record contains no specific evidence as to proof of death having been filed with the use of blanks specified by the company, and, while this point is made in the brief of counsel for the plaintiff in error, it is evident from the record that the company was recognizing that the insured had died and that it was willing to pay $420 on account of the death of the insured but was unwilling to pay the amount under the double-indemnity clause of the policy until it could be shown that the death of the insured was not caused by intentional shooting on the part of some third person. In a letter dated July 2, 1937, the superintendent of the LaGrange, Georgia, office of the company advised the plaintiff as follows: "I was in the district office Thursday, and at that time talked with the manager with reference to your claim. He states that the company is perfectly willing to meet all claims and make payments exactly as our contracts call for, and under the circumstances we are liable only for $420. If it is proven that the death occurred accidentally we will be only too glad to pay double the above amount." That letter shows conclusively that the company was refusing to pay the plaintiff the $420 under the double-indemnity clause of the contract, but would relent and pay the amount "if it is proved that the death occurred accidentally." Evidently the company was laboring under the mistaken impression that the burden of showing that the shooting of the insured was not intentional was upon the plaintiff, but the letter nevertheless shows a refusal to pay; and accordingly, under well-settled law, this relieved the plaintiff of the necessity of furnishing proofs of death, if it had not already done so, or of making any subsequent demand for payment. The right of the plaintiff to file suit immediately accrued. It appears from the evidence, however, that he forebore instituting suit and made efforts to solve the mystery of the insured's death, going so far as to prosecute two persons under an indictment for murder. On September 29, 1937, the plaintiff accepted from the company $420 as the principal death payment and

signed a receipt "in full satisfaction and final settlement of all claims and demands existing under the within policy." The contention of the defendant on the first trial that this receipt constituted an accord and satisfaction of all claims was ruled on adversely to the company by this court on the first appearance of the case here, and on the last trial this issue was eliminated. It was contended by the plaintiff that the matter of the additional payment of $420 was left in abeyance, pending investigation as to the manner in which the insured met his death, and it is now contended by the company that whatever delay the company indulged in was acquiesced in by the plaintiff, that no demand was ever made before the bringing of the present suit, and that, therefore, no recovery can be had for damages and attorney's fees on the alleged ground of bad faith. As stated above, because of the refusal of the company on July 2, 1937, to pay the $420 provided for under the double-indemnity provision of the policy it was not entitled to insist on proofs of death or any time in which to investigate the insured's death. A demand by the plaintiff would have been useless, and suit might properly have been instituted then and there. Conceding that the plaintiff did acquiesce in the postponement of the additional $420 payment, evidently acting on the mistaken assumption that the burden was on him to show that the insured was not intentionally shot by a third person, the company could rightfully claim only a reasonable time for the necessary investigation in this respect. So far as the record shows, the company did nothing to clear up the mystery but sat back and waited for the plaintiff to convince it by evidence that the shooting was not intentional. Finally, "along in 1939, the early part of 1939," as testified by the plaintiff, he again took the matter up with the company but was unable to obtain settlement. Then on August 14, 1939, the present suit was brought. In the circumstances above related we think that the jury was authorized to find that the company had acted in bad faith. It could not necessarily be absolved from the charge of bad faith by looking to the plaintiff to carry the burden, placed by law upon it, of showing that the death of the insured was not caused by intentional shooting on the part of another. This is not a case where an insurance company might be said to be acting in good faith because it had the right, as contended by the plaintiff in error, to have a jury determine from facts *adduced by the plaintiff*

whether or not the shooting was intentional. It is a case where the burden rested upon the insurer of proving the exception relied upon under the double-indemnity clause of the policy. In support of its contention of good faith it might have shown wherein it exercised itself to determine whether or not the shooting was intentional, but the record is silent as to anything it did to establish the truth as to the manner in which the insured met his death. It was seemingly content to wait until the plaintiff convinced it by evidence that the shooting was not intentional, but his inability to do so did not bar him from recovery for all time. When, in the early part of 1939, he called on the company for settlement, we think that a reasonable time had elapsed for the determination of the question, and the refusal of the company to pay at that time might well be found by the jury to have been in bad faith. Accordingly, we hold that the jury's verdict for $200 attorney's fees, supported by testimony from a disinterested attorney as to the reasonable fee for handling the case, was fully authorized.

The third special ground complains that the amount of interest allowed by the jury was excessive, in that the calculation should have been made only from the date of the filing of the suit, as no demand was made theretofore, and the interest should be $45.49 instead of $107.80 as allowed. The sixth special ground assigns error on an excerpt of the charge of the court to the effect that, in the event the jury found for the plaintiff, interest should be calculated from the time the $420 became payable, and would become due after the death of the insured and the submission to the company of proper proofs of death and payment refused. As we have shown in the preceding portion of this opinion, the plaintiff's right to sue accrued when the company declined to pay on July 2, 1937, and no demand for payment was necessary. The forbearance by the plaintiff, under the circumstances detailed, did not affect the amount of interest to be awarded by the jury in the event the plaintiff finally prevailed. The amount allowed by the jury, $107.80, appears to be a proper calculation at 7 per cent. per annum from July 2, 1937, the date the company by letter refused to pay the $420 claimed under the double-indemnity provision of the policy, and no harmful error is shown in these two grounds.

*Judgment affirmed. Stephens, P. J., concurs specially. Felton, J., dissents.*

STEPHENS, P. J.   I concur in the judgment of affirmance, and in all that is contained in the opinion, with the exception of what is stated in reference to the sufficiency of the evidence to sustain the verdict for a penalty and attorney's fees.   I am of the opinion that the evidence was sufficient to authorize the jury to find that the insurance company, in failing to pay, acted in bad faith in the sense of the penalty statute.