41942.   SUN INSURANCE OFFICE, LTD. v.
FIRST NATIONAL BANK & TRUST COMPANY.

ARGUED APRIL 6, 1966—DECIDED MAY 23, 1966—
REHEARING DENIED JUNE 2, 1966—

784

*Smith, Ringel, Martin & Lowe, Ralph H. Witt,* for appellant.

*Hull, Towill & Norman, Julian B. Willingham,* for appellee.

FELTON, Chief Judge. The issue of whether or not the insured's damage was caused solely because it had intentionally not recorded or filed the instrument as required by the policy apparently was not raised in the case. Accordingly, the defendant's liability under the policy depends upon the proper construction of the exclusion urged as a defense.

"It is well settled that the courts of Georgia, if there is any ambiguity in an insurance policy, will construe the contract most favorably to the insured. . . But it is equally well settled that no construction is required or even permissible when the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation. In such an instance, the language used must be afforded its literal meaning and plain ordinary words given their usual significance, and this rule applies equally as well to insurance contracts as to any other contract. . ." *Wolverine Ins. Co. v. Jack Jordan, Inc.,* 213 Ga. 299, 302 (99 SE2d 95) and cit. It can be demonstrated that the one reasonable interpretation of the exclusion clause is that the insurer is not liable for losses resulting from any loan made to a dealer when the property is, in fact, held for resale at any time during the insurance coverage period, whether or not there was any evidence that it was for resale at the time of the loan. The wording employed is ". . . when the property *is* for resale" (emphasis supplied), rather than words to the effect that the property *is known or should be known to be for resale,* as appellee would have us construe the exclusion.

Since an insurer has the right to define its assumed risks as narrowly as it wishes to provide itself with a more reasonable

basis of calculation of the probability of the risks, it can be shown that our construction of the exclusion is the more reasonable one by a comparison of the relative risks assumed under the two constructions. Section 27 of the Motor Vehicle Certificate of Title Act (Ga. L. 1961, pp. 68, 87; *Code Ann. Ch.* 68-4A) provides as follows: "The method provided in this Act of perfecting and giving notice of security interests subject to this Act is exclusive. Security interests subject to this Act are hereby exempted from the provisions of law which otherwise require or relate to the recording or filing of instruments creating or evidencing security interests in vehicles." This is reiterated by *Code Ann.* § 68-421a (a) (Ga. L. 1961, pp. 68, 83; Ga. L. 1962, pp. 79, 85; Ga. L. 1965, pp. 304, 311), which provides: "The security interest in a vehicle of the type for which a certificate of title is required shall be perfected and shall be valid against subsequent creditors of the owner, subsequent transferees and the holders of security interests and liens on the vehicle *by compliance with the provisions of this Chapter.*" (Emphasis supplied.) Therefore, if the plaintiff bank could have obtained a valid security interest in the automobile, it would have had to be obtained exclusively under the provisions of the Motor Vehicle Certificate of Title Act. *Code Ann.* § 68-404a (2) (Ga. L. 1961, pp. 68, 72; Ga. L. 1962, pp. 79, 80; Ga. L. 1964, p. 178) provides that no certificate of title need be obtained for a vehicle owned by a dealer in vehicles and held for sale, even though incidentally used on the highway or used for purpose of testing or demonstration. *Code Ann.* § 68-405a (Ga. L. 1961, pp. 68, 73; Ga. L. 1962, pp. 79, 80) provides as follows: "This Chapter does not apply to or effect a security interest in a vehicle created by a manufacturer or dealer who holds the vehicle for sale, but a buyer in the ordinary course of trade from the manufacturer or dealer takes free of the security interest." The effect of the above provisions is that the only way to create security interests in automobiles now is by the method provided in Ch. 68-4A, which does not apply to or affect dealers holding automobiles for sale, which automobiles not only need not have certificate of title, but also pass to buyers in the ordinary course of trade *free of the security interest.* Thus, even if the application for

a certificate of title had been filed by the borrower, as he stated he intended to do, no security interest in favor of the plaintiff lender would have been perfected thereby if the property was held for resale by the borrower. The same legal consequences would follow whether the borrower sold the automobile under his individual name or under his sole proprietorship-dealership name, since he was a dealer as defined by the Code and the insurance policy in either event.

No matter how much we might bemoan the fact that present-day business is transacted with much less frequency in accordance with the old-fashioned practice of reliance solely upon the bond of a man's word, the fact is that there is no longer complete adherence to such practice. The record shows that the borrower was a dealer and that the plaintiff knew he was a dealer and the legal consequences of this are not altered by the fact that the loan was made on the basis of the plaintiff's commendable, if somewhat unrealistic, reliance on the dealer's promise to have the title changed into his individual name for the purpose of keeping the automobile for his own personal use. The fact that the dealer, within the framework of our laws, could proceed to convey title to the automobile free of the plaintiff's attempted security interest, regardless of whether he was acting in his capacity as a dealer or as an individual and even in violation of his implied agreement that the automobile was not to be resold, illustrates the very reason for which the exclusion clause was included in the insurance contract. It can not be imagined that the insurer would intend to indemnify for losses arising out of even good faith loans on automobiles to dealers, who can, with impunity, thus effectively put the security beyond the reach of the insured lenders, thereby destroying their security interest, while keeping the ill-gotten fruits of their deception. As for proof of the fact that the automobile in question was held for resale, the fact that it was sold, with its title still in the name of the dealership, only some two months after the loan was obtained, speaks for itself. Under our construction of the policy, moreover, the fact that the dealer may have even actually intended at the time of making the loan not to resell the automobile would not prevent the automobile from being considered as

held for resale if it is in fact resold by the dealer, either in his individual or dealership name, during the insurance coverage period.

It follows that the court erred in its judgment in favor of the plaintiff.

*Judgment reversed. Frankum and Pannell, JJ., concur.*