## 50075. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY v. ALLOWAY.

MARSHALL, Judge.

Defendant insurer appeals from a judgment entered against it in favor of its insured plaintiff, plus penalty and attorney fees, based on the following stipulated facts: Defendant issued a farm owners insurance policy, "Broad Form," to plaintiff. During the term of the policy, a horse owned by the plaintiff suffered a mangled leg, and had to be put to death. The cause of the mangled leg was unknown. Plaintiff filed a proof of loss with defendant wherein he stated that the horse died as a result of a mangled leg of an unknown cause.

The insurance policy provided coverage "against all direct loss by fire, lightning, and other perils insured

against in this policy . . ." The general coverage provisions of the policy that applied to all property under Section I (dwelling, appurtenant structures, etc., including livestock) insured against direct loss by these named perils: (1) fire and lightning, (2) removal, (3) windstorm and hail, (4) explosion, (5) riot and riot attending a strike and civil commotion, (6) aircraft, (7) vehicles, (8) damage from smoke, (9) vandalism and malicious mischief, (10) theft, and (11) overturn of a vehicle.

In addition to the perils named that applied to all property in Section I, there was specified coverage of "Farm Personal Property" under Coverage E, which insured "all farm personal property . . . except as hereinafter provided." One of the items listed thereunder was "Livestock," the definition of which included horses. Under Coverage E, the policy was "extended to cover certain direct losses by theft" and was extended "to include direct loss resulting from" electrocution, death by wild animals, accidental shooting, and drowning.

There were listed several exclusions under Coverage E, one of which was that the insurer would not be liable "for loss to livestock or poultry caused in whole or in part by running into ditches or against fences or other objects, nor for loss as the direct or indirect result of fright, howsoever caused."

Defendant insurer denied coverage on the basis that the insured plaintiff had not shown that the loss was covered by any of the perils named in the policy. The plaintiff contends that the clause, "This policy covers all farm personal property . . . except as hereinafter provided," means that all property was covered except that on which coverage is limited therein, and that the only limits set forth in the policy were those concerning theft of animals, death caused by wild animals and accidental shooting or drowning. Plaintiff contends that he has thus established a prima facie case of coverage and the burden was then shifted to the defendant to prove the loss came under the exclusion. *Held:*

1. "In an action to collect on an insurance policy, the insured must show that the occurrence was within the type of risk insured against to make a prima facie case." *Mathis v. Hanover Ins. Co.*, 127 Ga. App. 89, 92 (192 SE2d

510); *Reserve Life Ins. Co. v. Davis,* 224 Ga. 665 (2) (164 SE2d 132); *United States Fire Ins. Co. v. Tuck,* 115 Ga. App. 562 (155 SE2d 431). The policy in question here is not an "all risks" policy even though denominated as a "broad form" policy. See 16 E. G. L. 345, Insurance, § 217 (1969) as to the meaning of a "broad form" policy. It insures only against loss from certain "named perils." That *"all* farm personal property" is covered does not mean that all farm property is covered against *all* hazards. We have stated that "an insurer has the right to define its assumed risks as narrowly as it wishes to provide itself with a more reasonable basis of calculation of the probability of the risks . . ." *Sun Ins. Office v. First Nat. Bank &c. Co.,* 113 Ga. App. 782, 784 (149 SE2d 753). See e.g. *Still v. Great Central Ins. Co.,* 122 Ga. App. 99 (176 SE2d 268). In the farm owners policy sub judice the insurer has narrowed the · scope of its liability by specifically delineating those risks which were covered. Nowhere does the policy state that it insures against loss from all causes except those excluded.

Neither in his proof of loss nor at the trial did plaintiff offer to prove that the horse died as the result of a mangled leg caused by any one of the named perils. Indeed, it is difficult to conceive of how any one of the named perils could have caused the horse's leg to become mangled. Plaintiff has been afforded the opportunity to prove same, but has failed to do so and submitted the case to trial on stipulated facts. Where the "plaintiff sues upon an insurance policy to recover compensation for a loss he has admittedly sustained, the primary inquiry is whether the loss resulted from a hazard against which the policy afforded protection"; and "the burden of proof was upon the plaintiff to prove by a preponderance of the evidence . . ." that the loss resulted from a hazard against which the policy afforded protection. *United States Fire Ins. Co. v. Tuck,* 115 Ga. App. 562, 569, supra. Plaintiff did not establish a prima facie case and the trial court decision must be reversed.

2. In view of the above decision to reverse, there can be no award of a "bad faith" penalty nor attorney fees for plaintiff.

*Judgment reversed and remanded with direction to*

*enter a judgment in favor of the defendant. Bell, C. J., Pannell, P. J., Deen, P. J., Clark and Webb, JJ., concur. Quillian and Evans, JJ., dissent. Stolz, J., not participating.*

ARGUED JANUARY 14, 1975 — DECIDED APRIL 10, 1975 — REHEARING DENIED APRIL 29, 1975 — 

*Fletcher & Watson, Dennis D. Watson,* for appellant.
*Hatcher & Daniel, Ross L. Hatcher, III,* for appellee.

EVANS, Judge, dissenting.

E. B. Alloway purchased a home owners hazard insurance policy from Georgia Farm Bureau Mutual Insurance Company. This policy insured his home and farm in Catoosa County, Georgia, with multiple coverages. An added premium had been paid as to livestock (including horses), increasing the coverage from $200 per head to $600 per head. The policy contained an exclusion as to livestock, among others, providing that the insurer was not liable for loss: ". . . caused in whole or in part by running into ditches or against fences or other objects, nor for loss as the direct or indirect result of fright, howsoever caused."

One of Alloway's horses received a mangled leg, and because of this injury, it was killed. The death of the horse was the direct and proximate result of the injury to the leg, although it was unknown as to how the leg was mangled.

Alloway filed proof of loss and written demand for payment, and the insurance company refused to pay. Suit was filed seeking $500, plus penalty for bad faith and attorney fees.

The parties stipulated the facts substantially as set forth above, waived a jury trial, and agreed for the court to try the case without a jury. The court tried the case and held that the loss was covered by the insurance policy, and awarded $500 to plaintiff for loss of his horse, plus $125 as penalty, and $525 as attorney fees. Defendant appeals. The majority of this court reverse with direction that judgment be entered for defendant. I dissent.

1. At the top of the page which sets forth the insuring provisions of the policy, we find in large capital letters the following: "Farmowners Policy — Broad Form provisions applicable to section 1 description of property and interests covered." And on the same page: "This policy *covers all farm personal property,* usual to the operation of a farm, belonging to the insured or for which the insured may be liable . . . (a) Livestock: Definition — Livestock is defined as cattle, *horses,* mules, swine and sheep. Dogs, cats and fur bearing animals are not covered." And still on the same page: "Exclusions: The company shall not be liable under Coverage E: (1) for loss to *livestock* or poultry caused in whole or in part by running into ditches or against fences or other objects, nor for loss as the direct or indirect result of fright however caused." (Emphasis supplied.) The policy was written on fourteen (14) pages, most of which were in fine print.

Plaintiff Alloway contends the loss of his horse was covered under the insurance policy; defendant Georgia Farm Bureau contends the loss of the horse was not covered. The solution of the issue, needless to say, is somewhat more difficult than stating the issue. The language we have quoted from the policy, in stating the case, would indicate the horse was insured, subject to the exclusion which provided that coverage should not apply if the horse was injured by running into a ditch, or against a fence or other object or as a result of fright. This language would further make it appear that at the trial of the case, when plaintiff introduced the policy of insurance into evidence, and proved the loss of his horse while the policy was in effect, and the value thereof, the burden would then shift to the defendant to prove the loss was within an exclusion in the policy. The law is quite plain to the effect that an insurance company, relying on an exclusion, has the burden of proving the exclusion and that the loss resulted therefrom. See *Gaynor v. Travelers Ins. Co.,* 12 Ga. App. 601 (5) (77 SE 1072); *Darby v. Interstate &c. Ins. Co.,* 107 Ga. App. 409 (1) (130 SE2d 360); *State Farm Mut. Auto. Ins. Co. v. Dilbeck,* 120 Ga. App. 740 (1) (172 SE2d 139).

2. Despite the apparent coverage, defendant contends a reading of the entire policy will show the

coverage was not in effect in this case, and that plaintiff cannot prevail merely by proving the policy contained language which is favorable to his contention of coverage, while ignoring other provisions in the policy. Defendant's contention is both plausible and correct. The entire policy must be considered in order to properly interpret same.

3. But in considering the entire policy, if it is ambiguous in that some parts imply coverage and other parts imply a lack of coverage, the ambiguity must be construed most favorably towards the insured, as the insurance company wrote the policy. See *Johnson v. Mutual Life Ins. Co.,* 154 Ga. 653 (115 SE 14); *Benevolent Burial Assn. v. Harrison,* 181 Ga. 230, 239 (181 SE 829); *Christensen v. New England Mut. Life Ins. Co.,* 197 Ga. 807, 813 (30 SE2d 471).

In *Mass. Benefit Life Assn. v. Robinson,* 104 Ga. 256 (2) (30 SE 918), it is held that, "If a policy of insurance is capable of being construed in two ways, that interpretation must be placed upon it which is most favorable to the insured." "The contract as contained in the policy must be *construed as a whole,* so that, if possible, each stipulation shall be made consistent with the others, and the whole allowed to stand. If, however, *the clauses* in the contract are of such nature that *they conflict with each other,* then that interpretation must be placed upon the writing which would be *most favorable to the insured."* Id., p. 277. (Emphasis supplied.)

Also see *Davis v. United American Life Ins. Co.,* 215 Ga. 521, 522 (2) (111 SE2d 488), holding that contradictory clauses must be construed against the insurance company, a full-bench decision in which the lower court was reversed.

4. Plaintiff made out a prima facie case, and the burden of proof was shifted to defendant, when he introduced the policy, and proved the injury and death to his horse during the period covered by the policy. In *North British &c. Co. v. Mercer,* 90 Ga. App. 143 (1) (82 SE2d 41), it is held that "Where, as here, the plaintiff proves the insurance contract, and the loss, a prima facie case is thereby made." *Life & Cas. Ins. Co. of Tenn. v. Gartrell,* 74 Ga. App. 204 (2) (39 SE2d 437), holds that, "The burden of proof was on the plaintiff to make out his case in the first

instance; but the burden was on the defendant to establish his affirmative defense, *notwithstanding the provision in the policy sued on that the burden of proof should be upon any claimant thereunder to prove that the loss or injury was covered by the policy.*" (Emphasis supplied.) In *Staten v. General Exchange Ins. Co.*, 38 Ga. App. 415-416 (2) (144 SE 53), it is held that "The general purpose of the policy of insurance sued on in this case was to insure the property against theft, and upon this point a prima facie case was made out merely by proof that the car was stolen, and *the burden was then shifted to the defendant to bring the case within any exception of the policy by reason of which liability may have been denied.*" (Emphasis supplied.) Also see *Mathews v. Gulf Life Ins. Co.*, 64 Ga. App. 112, 120 (12 SE2d 202); and *Scott v. Life & Cas. Ins. Co.*, 34 Ga. App. 479 (129 SE 903), which cases hold the burden was on the insurance company to prove the death or loss was within some exception contained in the policy of insurance.

Everything necessary to establish a prima facie case for plaintiff was set forth in the written stipulation of facts, including the insurance policy, loss of the horse during the period covered by the policy, and that proper proof of loss and written demand for payment had been made. The burden was thereafter shifted to defendant insurer.

5. The policy of insurance in this case provided coverage as to the horse in question, unless some provision in the policy served as an exclusion, or otherwise negated the theory of coverage. While plaintiff was specific in his complaint, defendant was quite general in his written defense. He contended no cause of action was set forth against him; admitted the policy provided for payment if the horse was destroyed or injured, and alleged: ". . . however, the payment of said sum of money was subject to the terms and conditions of the policy" — *without specifying any particular provision upon which he relied.* Nor did the stipulation of facts upon which the case was tried *specify any particular provision or exclusion upon which defendant relied.*

6. At the very least, the policy was ambiguous and as such ambiguity must be construed against the insurance

company, this is an additional reason for finding that coverage existed. The defense asserted sought to impose upon the trial judge (sitting as judge and jury) the obligation of sifting through the policy to see if some provision could be found which would serve as a defense, although defendant failed to point out any such provision upon which he relied. The trial judge was correct in holding that coverage existed and in finding for the plaintiff.

7. There was no sound defense to plaintiff's suit; the insurance company wrote the policy and should have been able to correctly interpret and construe same; if it wrote the policy so that it was ambiguous, then it knew the policy must be construed *against the ambiguity and in favor of coverage.* See *Benevolent Burial Assn. v. Harrison,* 181 Ga. 230, 239, supra; *Strain Poultry v. American Sou. Ins. Co.,* 128 Ga. App. 600, 602-603 (197 SE2d 498).

8. Where an insurer defends against the policyholder and its defense is either *unfounded or frivolous,* it is subject to payment of attorney fees for bad faith. See *Cimarron Ins. Co. v. Pace,* 212 Ga. 427, 431 (93 SE2d 593); *Gulf Life Ins. v. Matthews,* 66 Ga. App. 162 (2) (17 SE2d 247); *Metropolitan Life Ins. Co. v. Lovett,* 50 Ga. App. 763 (4), 768 (179 SE 253); *American Fire & Cas. Co. v. Barfield,* 81 Ga. App. 887 (3) (60 SE2d 383). Note that the defense subjects the imposition of attorney fees, not because it is *both unfounded and frivolous,* but if it is *either unfounded or frivolous.* Here, the defense, at the very least, was unfounded and the award of attorney fees was authorized.

9. The amount of the horse's value — $500 — was stipulated by the parties, and there was no error in the judgment of the trial court, sitting without a jury, in favor of plaintiff for the amounts rendered.

I am authorized to state that Judge Quillian concurs in this dissent.