## 47390. BERGEN v. TRAVELERS INSURANCE COMPANY.

BELL, Chief Judge. The appellant was insured under an automobile policy issued by the appellee. The policy provided for collision and uninsured motorist coverage. The insured vehicle was involved in a collision with a known uninsured motorist. Under the collision coverage the company paid $3,838 for damages to the automobile and received a loan receipt for this amount from the insured. The insured then sued the uninsured third party including as part of his alleged loss, the damage to his car. He recovered a judgment in the amount of $4,437.06. The insured then made demand on the insurance company to satisfy the judgment by paying him an amount which would have the effect of requiring the insurer to pay the attorney's fees for the insured's suit. The insurance company petitioned the superior court for a declaratory judgment. By stipulation of the parties a jury trial was waived and it was agreed for the issue in dispute to be decided by the court without a jury. A judgment was rendered to the effect that the insured was not entitled to his claimed deduction of one-third as attorney fees of the amount paid to him under the terms of the loan receipt, and that appellee was entitled to deduct the full amount of the collision coverage payment from the amount of the judgment recovered by appellant. *Held:* The appellant cannot recover the claimed attorney fees as there is no contract by which the insurer agreed to

pay them. The principle stated in *Commercial Union Ins. Co. v. Scott,* 116 Ga. App. 633 (158 SE2d 295) and *First of Ga. Ins. Co. v. Horne,* 120 Ga. App. 379 (170 SE2d 452) has application here. In *Scott* and *Horne* the plaintiffs were lawyers who sued to recover attorney fees for their services in actions in which they, as professional men, had represented the insured, recovered, and then brought suit for attorney fees against insurers who had interests in the prior judgments. Each case held that the fees were not recoverable as the relationship of attorney and client is a contractual one which must be agreed to by each of the parties and there was in both cases an absence of any contract whereby the insurers had contracted with the insureds' attorneys to pay attorney fees.

*Judgment affirmed. Eberhardt, P. J., Quillian, Clark and Stolz, JJ., concur. Evans, J., dissents. Deen, J., dissents with Pannell, J., concurring. Hall, P. J., dissents to judgment.*

ARGUED SEPTEMBER 5, 1972 — DECIDED MARCH 14, 1973 — REHEARING DENIED MARCH 30, 1973 — ▇▇▇

*Charles L. Sparkman, Joseph B. Bergen,* for appellant.
*Bouhan, Williams & Levy, James M. Thomas, Walter C. Hartridge,* for appellee.

DEEN, Judge, dissenting. This question has already been settled by this court in *Pharo v. Travelers Ins. Co.,* 119 Ga. App. 344 (3) (167 SE2d 226), wherein it was held: "Since the loan receipt from Pharo to State Farm Mutual referred only to 'net recovery' and specified that Pharo should prosecute his action against the tortfeasor 'at the expense [and under the exclusive direction and control] of said insurance company,' the deduction of the proportionate expenses for attorney fees incurred by the plaintiffs which resulted in the final settlement were

properly borne by State Farm Mutual." "Net recovery" means recovery after expenses. Cf. "net" and "net balance," Black's Law Dictionary. The plaintiff's net recovery was the amount he actually received after deduction of the expenses of litigation including the one-third contingent fee, as was held in *Commercial Union Ins. Co. v. Scott,* 116 Ga. App. 633 (158 SE2d 295). Comparison of the loan receipts here and in *Pharo* shows that Judge Evans is right in assuming that the name of the person to bear the expenses of litigation and control the litigation for recovery of the collision insurance from the third party tortfeasor was simply not filled in, and the loan receipt does not mean that Bergen assumed all expenses of litigation to obtain it.

As a matter of fact, there is no way that the insurer could by loan receipt have compelled Bergen to pay the pro rata share of attorney fees on the collision insurance due the insurer in any event. The insurer had paid Bergen the amount of loss and was entitled to recover it from the tortfeasor as a matter of law under general principles of subrogation. *Universal Credit Co. v. Service Fire Ins. Co.,* 69 Ga. App. 357 (25 SE2d 526). And it would of course have had to pay counsel for doing so. Its insurance contract with Bergen was simply to "pay for loss caused by collision to the owned automobile or to a non-owned automobile but only to the amount of each such loss in excess of the deductible amount stated in the declarations." Therefore, although it had a right to demand an assignment of the chose in action if it needed to have it for procedural purposes, it had no right to demand that the insured stand the expense of the insurer's collecting the subrogated amount. *Any such condition* placed in the loan receipt which the company requested in lieu of a general assignment of the chose in action would have been without consideration, nudum pactum and unenforceable. The expenses of collecting the sum back from the tortfeasor in either legal or

conventional subrogation would have been the concern of the insurer alone. The insured had paid for, was entitled to, and received the collision insurance, *all* the collision coverage less the deductible, which belonged to the insured when the insured paid his premium for collision insurance.

The majority opinion is misapplying the two cases primarily relied upon. In *First of Ga. Ins. Co. v. Horne,* 120 Ga. App. 379 (170 SE2d 452) the attorney for the insured attempted to sue the insurer directly, and of course he could not do so because he had no contract with the insurance company. His contract was with the insured and he should have collected his fee from the insured. The loan receipt between insured and the insurance company, which tracked the law (i.e. that the insured could not twice recover for collision insurance, and that the insurer was entitled to have its share of the "net recovery" returned) was a matter between them, into which the attorney had no right to personally inject himself.

As for *Commercial Union Ins. Co. v. Scott,* 116 Ga. App. 633, supra, it deals with, and cites as its sole authority a textbook on, workmen's compensation, and decides the priority of liens of employers under the workmen's compensation law, our Georgia statute, Code Ann. § 114-403. This involves only one subject matter — compensation for bodily injury. Our present case involves two separate subject matters — property damage for which the insured has been already fully compensated, and bodily injury for which he has received no compensation. The *Scott* case, however, on page 636 points out, as we have here, that *"net* recovery means that *attorney's fees* and expenses are deducted in priority to" the sum to which the subrogee is entitled. (Emphasis supplied.)

The judgment should be reversed.

I am authorized to state that Judge Pannell concurs in

this dissent and Presiding Judge Hall concurs in the result of this dissent.

EVANS, Judge, dissenting. The Travelers Insurance Company issued an insurance policy to Bergen, covering his automobile, and including uninsured motorist coverage. The automobile was damaged in a collision with an uninsured motorist, and Travelers paid Bergen $3,838 for damages to said car. This represented insurance for which Bergen had paid the required premium, and he had at no time "borrowed" any sum of money from Travelers. But before paying over to Bergen this sum, to which he was justly entitled, Travelers Insurance Company called his insurance money a "loan," and agreed to pay the money to him if Bergen would execute a fictitious and unauthorized writing designated as a "loan receipt." We emphasize that this ploy was fictitious and unauthorized.

The "subrogation" clause of the policy provides as follows: "Subrogation: In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and with respect to Part 2, all the rights of recovery therefor which the injured person or anyone receiving such payment may have against any person or organization. The insured, or with respect to Part 2, such person, shall execute and deliver instruments and papers, do whatever else is necessary to secure such rights and shall do nothing after loss to prejudice such rights." Simply stated, this clause subrogated Travelers to all of Bergen's rights against the person causing the damage, and Bergen agreed to execute and deliver any papers necessary and do any other necessary act to subrogate Travelers to Bergen's right of action for damages. *But it did not authorize Travelers to call this payment of insurance a loan; nor require Bergen to sign a loan receipt; nor require Bergen to assume the obligation of prosecuting an action to recover the insurance money*

*back and turn it over to Travelers.*

Without any authority under the insurance policy, Travelers sought to saddle Bergen with Travelers' obligation of prosecuting the claim and recovering back the money. And its agent who drafted the "loan receipt" — while carefully avoiding any mention of "attorney's fees," did at one place in the spurious and unauthorized loan receipt insert language that purportedly required Bergen to: " . . . prosecute suit against such person or persons, corporation or corporations, through whose negligence the aforesaid loss was caused, or who may otherwise be responsible therefor, with all due diligence, in our own name, *but* at the expense of and under the exclusive direction and control of the said_____."

And here the *uncompleted document* ends. Who was to bear the expense? The loan receipt is incomplete — the name was never filled in. It is quite plain, however, that the document by its language did not intend that the person signing the loan receipt was also to bear the expense. Notice the language: "We hereby agree to prosecute . . . with all due diligence in our own name, *but* at the expense of and under the exclusive direction and control of the said_____."

If it had been intended that Bergen—the same person who was to prosecute the action—was also to bear the expense, the instrument would have used the conjunction "and." Its use of the word "but" clearly implies that someone other than the signatory to the loan receipt was to bear the expense.

We attach (p. 622, post) a photocopy of the loan receipt as it appears at page 24 of the transcript, with particular emphasis on the ending of same, showing it to be incomplete, and showing the disjunctive "but" immediately before the last sentence which deals with expense.

Webster defines "but" as "a conjunction expressing

B-2964666

## LOAN RECEIPT

Dated: August 12, 1970

$ 3,838.00

### RECEIVED FROM

TRAVELERS INSURANCE COMPANY

Three Thousand Eight Hundred &
the sum of Thirty Eight Dollars & No/100 Dollars as a loan,
without interest, under policy No. 100-00882192 , repayable only
in the event and to the extent that any net recovery is made by
us

from any person or persons, corporation or corporations, or other parties, on account of loss by fire, sprinkler leakage, or other casualty for which this Company may be liable occasioned to said property on or about 13th day of February 19 70.

As security for such repayment, we hereby pledge to said

TRAVELERS INSURANCE COMPANY--

whatever recovery we may make, and deliver to it, herewith all documents necessary to show our interest in said property and we hereby agree to present claim promptly and, if necessary, to commence, enter into and prosecute suit against such person or persons, corporation or corporations, through whose negligence the aforesaid loss was caused, or who may otherwise be responsible therefor, with all due diligence, in our own name, but at the expense of and under the exclusive direction and control of the said

A TRUE COPY

In presence of

F-2222 ·Rev. 3-67 PRINTED IN U.S.A.

Filed in office this

EXHIBIT B - 1.

opposition, contradiction, antithesis, exception, discrepancy, limitation." Webster defines "and" as "along or together with." In the case sub judice, if the one who was to prosecute the action was to also bear the expense the language would have been thus: "We agree to . . . prosecute suit . . . in our name *and* at the expense of the said _____." Clearly, the one who was to prosecute the suit and the one who was to bear the expense were *two different persons* or entities. Now let us look at the language used in the loan receipt by Travelers Insurance Company: " . . . repayable only in the event *and to the extent that any net recovery* is made by us." What is a "net recovery"? Webster defines "net" as "clear of, or free from all charges, deductions, etc.; remaining after the deduction of all charges, outlay, loss, etc." In Ga. R. & Bkg. Co. v. Wright, 132 F 912, 914, it is held: "The use of the word 'net' indicates that something is being deducted." It is impossible to give any meaning whatever to this language in the contract if Bergen is required to pay the expense, and is not permitted to *deduct* that expense. If he pays the attorney's fees, then what has he deducted? When Bergen, without any obligation whatever to do so, (except the one foisted upon him by the insurance company when it persuaded him to sign an unauthorized and fictitious loan agreement) prosecuted the case and came to Travelers with two-thirds of the amount of insurance it had paid out to its insured, Travelers says, "We want it all—you, Mr. Bergen, whether required to do so or not, have signed a loan agreement, and we contend you therein agreed to bear the expense and put us back in the position we occupied before we paid the insurance to you." But Bergen points out that he obligated himself to pay back only the "net recovery" and that he has paid or owes his attorney 33 1/3%, and the *net recovery* is 66 2/3% of the total amount recovered from the uninsured motorist which he tenders to Travelers.

But Travelers is adamant, and although its agent drafted the contract it completely ignores those words "net recovery" therein and insists on the language: "We . . . hereby agree to . . . prosecute suit . . . in our own name, but at the expense of and under the exclusive direction and control of the said _____."

Bergen contends this latter language is incomplete because the name of the person to bear the expense was not inserted in the contract . . . and that it is very clear from the use of the conjunction "but" that a different person was to bear the expense than the person who prosecuted the suit. Further, Bergen insists, as Travelers drafted the contract, and placed "net recovery" therein, any other contradictory language (if indeed there is any intelligible contradictory language in the loan receipt) must give way to "net recovery" because ambiguities in a contract must be construed most strongly against the one who drafted same, and most favorably toward the party thereto who did not draft the contract. See *Moorefield v. Fidelity Mut. Life Ins. Co.,* 135 Ga. 186 (2) (69 SE 119); *Benevolent Burial Assn. v. Harrison,* 181 Ga. 230, 240 (181 SE 829); *Howkins v. Atlanta Baggage &c. Co.,* 107 Ga. App. 38 (1) (129 SE2d 158).

Thus, in this dissent, it is respectfully contended:

1. The "loan receipt" was a fictitious instrument, not authorized by the insurance policy, by law, or by the facts. The payment of insurance to Bergen was not a loan.

2. The subrogation agreement in the policy of insurance did not authorize or require Bergen to sign a loan receipt; and did not require him to assume the burden of prosecuting a suit so he might recover for Travelers and return to it all sums Travelers had paid to him. He was required only to subrogate Travelers to his position and allow it to proceed in his name.

3. The loan receipt is not complete in that the language at the last does not name the person who has the burden of bearing the expense.

4. The large space left above Bergen's signature indicates a place for insertion of a name, and the loan receipt just did not insert such name.

5. The language used at the last of the loan receipt, including the use of the word "but" clearly shows that it was intended that one person prosecute the suit, and a different person bear the expense.

6. The loan receipt is without any consideration whatever and is a nudum pactum; the insurance company owed Bergen the insurance money and was required to pay it to him; it cannot successfully contend that this payment was a loan, and was the consideration for signing an unauthorized loan receipt, and an agreement to do something (prosecute the suit) that the policy of insurance did not require him to do.

I, therefore, dissent from the majority opinion, and would reverse this case.